**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CINDY WHITAKER,

        Plaintiff,

vs.                                                No. CIV 04-1237 JB/WDS

SAN JON SCHOOLS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment, filed January 24, 2006 (Doc. 22). The Court held a hearing on the motion on April 13, 2006. The primary issue is whether Defendant San Jon Schools has demonstrated that there is no genuine issue of material fact that Plaintiff Cindy Whitaker did not suffer an adverse employment action, that San Jon did not treat Whitaker differently than a similarly situated male employee, and that changes in Whitaker's employment were pursuant to legitimate, non-discriminatory reasons. Because there is no genuine issue of material fact on any of those issues and San Jon Schools is entitled to judgment as a matter of law, the Court will grant the motion in substantial part and enter judgment for San Jon.

**FACTUAL BACKGROUND**

Except where otherwise indicated, Whitaker does not dispute the following facts. Whitaker is a teacher in the San Jon School District. See generally Affidavit of Craig Stockton ¶¶ 6-27, at 1-4 (executed January 24, 2006)(hereinafter "Stockton Aff."). Whitaker stated in her deposition that, from 1991 through 2003, there have been allegations against her for inappropriate interactions with students, although in her response she stated, without any supporting affidavits or deposition

transcripts, that any allegations were unbeknownst to her and she denied the validity of all complaints made against her.  See Deposition of Cindy Whitaker at 106:2-8 (taken January 12, 2006)(hereinafter "January 12 Whitaker Depo."); Response at 2, filed February 22, 2006 (Doc. 28).  During the 2000-01 school year, Whitaker brought a student into a classroom and struck the student with her hip because the student had hurt a classmate in a restroom.  See January 12 Whitaker Depo. at 33:25-34:3.  Because of Whitaker's action, the student "did dramatically fly onto a table."  Id. at 34:3-4.  Special Education Teacher Felecia Flint witnessed this incident.  See Defendant's Undisputed Material Fact 7; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 7 (registering no dispute that Flint saw the alleged incident); Statement of Felecia Flint at 1 (dated October 9, 2003).

        In response to this incident, School Superintendent Stephanie West sent two memoranda.  In the first memorandum, West placed Whitaker on paid administrative leave and required her to attend a workshop that teaches strategies to deal with ADD and ADHD behavior in the classroom.  See Defendant's Undisputed Material Fact 6; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 6 (registering no dispute with this fact); Memorandum from Stephanie West to Cindy Whitaker at 1 (dated December 5, 2000)(hereinafter "December 5 Memo").  West warned Whitaker that, "if another accusation is made, I will be forced to place you on unpaid leave, and ask for your resignation."  Defendant's Undisputed Material Fact 9; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 9 (registering no dispute with this fact); December 5 Memo at 1.  In the second memorandum, West advised Whitaker that Whitaker was not "to touch, handle or use any other form of physical discipline with any student.  You are not to raise your voice or intimidate students in any manner."  Defendant's Undisputed Material Fact 11; Plaintiff's Response

-2-

to Defendant's Statement of Undisputed Material Fact 11 (registering no dispute with this fact)[1]; Memorandum from Stephanie West to Cindy Whitaker at 1 (dated December 11, 2000)(hereinafter "December 11 Memo").   West informed Whitaker that she must contact Debbie Carter, the elementary head teacher, if Whitaker believed a situation required disciplinary action.   See Defendant's Undisputed Material Fact 12; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 12 (registering no dispute with this fact); December 11 Memo at 1.   West also designated Carter to be Whitaker's mentor for the remainder of the school year regarding classroom discipline.   See Defendant's Undisputed Material Fact 13; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 13 (registering no dispute with this fact); December 11 Memo at 1.   Whitaker also went to a doctor and received medication to help relieve her stress.   See January 12 Whitaker Depo. at 34:6-9.

Whitaker was placed on paid administrative leave on October 9, 2003, for allegedly shoving a student.   See Complaint ¶¶ 7-8, at 2, filed October 29, 2004 (Doc. 1); Stockton Aff. ¶ 11, at 2. While on administrative leave, then Superintendent Joel Henry instructed Whitaker to have no contact with anyone related to the school, and not to come onto campus.   See Deposition of Cindy Whitaker at 16:12-15 (taken January 21, 2006)(hereinafter "January 21 Whitaker Depo.").   After notification of being placed on administrative leave, but before leaving campus, Whitaker was allowed to complete lesson plans and co-ordinate the transition.   See id. at 20:11-18.   Upon request to the administration, Whitaker was allowed to come onto the campus to attend homecoming ceremonies in which her daughter participated.   See id. at 17:21-18:8.   Whitaker contends that Henry refused to

---

[1] Whitaker does not dispute the substance of this fact, but instead states that "these unnecessary warnings were in response to allegations that she was completely absolved of." Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 9

allow her to come onto campus to attend the homecoming until her National Education Association representative became involved.  See Response at 2.

The Tenth Judicial District Attorney's Office investigated the 2003 incident.  See Stockton Aff. ¶ 14, at 2.  Pursuant to a letter issued on November 14, 2003, the Tenth Judicial District Attorney's Office decided not to prosecute Whitaker.  See Letter from Ronald W. Reeves, District Attorney, to Chief Ben Gates, San Jon Police Department, at 1 (dated November 14, 2003).  Because of Whitaker's previous history of inappropriate contacts with third grade students,  Henry reassigned her to the library.  See Defendant's Undisputed Material Fact 21; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 21 (registering no dispute with this fact)[2]; Letter from Joel Henry, Superintendent, to Cindy Whitaker at 1 (dated November 26, 2003)(hereinafter "November 26 Letter").  Within two weeks, Henry reassigned Whitaker to her third grade position subject to conditions that San Jon contends were designed to protect both the third grade students and her, although Whitaker does not feel San Jon's actions were designed to protect her, but were a form of disparate treatment.  See Defendant's Undisputed Material Fact 22; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 22 (registering no dispute with this fact except as stated); Letter from Joel Henry, Superintendent, to Cindy Whitaker at 1-2 (dated December 3, 2003)(hereinafter "December 3 Letter").

Whitaker was allowed to perform her duties as a third grade teacher.  See Defendant's

---

[2] Whitaker does not dispute that Henry reassigned her to the library *because* of her previous history of inappropriate contacts with third grade students.  Instead, she disputes this fact only "to the extent that any complaints alleged against Plaintiff were unbeknownst to her, and Plaintiff denies the validity of all complaints made against her."  Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 21.  Whitaker therefore does not dispute that Henry reassigned her to the library and that he did so for this particular reason; she argues only that she is unaware of these claims of inappropriate contact and denies any truth to these assertions.  See id.

Undisputed Material Fact 23; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 23 (registering no dispute with this fact); December 3 Letter at 1-2.  Whitaker finished the 2003-04 school year as a third grade teacher.  See Stockton Aff. ¶ 21, at 3.  Whitaker was reassigned to grades 6-8 for the 2004-05 school year.  See id.  Whitaker had previously requested reassignment to the 6-8th grade, but she felt that the reassignment was retribution.  See January 21 Whitaker Depo. at 74:1-7.  Whitaker was reassigned to a program coordinator position for the 2005-06 school year following additional complaints made to the administration about Whitaker's conduct toward students.  See Stockton Aff. ¶ 26, at 4.  Whitaker did not suffer a reduction in pay or benefits based on her reassignments to the 6-8th grade or the program coordinator position.  See id. ¶ 25, at 4; January 12 Whitaker Depo. at 14:10-14.

Waymond Ragland is employed as an educational assistant for the San Jon School District. See Affidavit of Waymond Ragland ¶ 1, at 1 (executed January 24, 2006)(hereinafter "Ragland Aff.").  No complaints that he had used improper force toward a student were documented during the term of Ragland's employment before October 2003.  See id. ¶ 6, at 1; Stockton Aff. ¶ 13, at 2. In October 2003, Ragland was the subject of an accusation that he had used improper force with an elementary student while interacting with him.  See Ragland Aff. ¶ 6, at 1.  San Jon contends that, upon notification to the school district, Henry placed Ragland on immediate administrative leave with pay.  See id. ¶ 7, at 1.  Whitaker disputes that Ragland was immediately placed on administrative leave.  See Response at 3.  In any case, the matter was turned over to the Ninth Judicial District Attorney's Office for investigation, as Ragland's wife worked at the courthouse in Tucumcari.  See Ragland Aff. ¶ 12, at 2. San Jon contends that Henry instructed Ragland not to attend school events, not to come onto campus, not to contact the complaining student or his parent, and not to have

interaction with students.  See id. ¶ 9, at 2.  Whitaker disputes that Ragland was not allowed to attend

school events or to have interaction with the students, and states that he was able to attend all games

even though he did not have an articulated need to attend.  See Response at 3-4.  At the hearing,

Whitaker's counsel conceded, however, that there was no evidence that Ragland had contact with

students while at the pool and that the Court must therefore assume that Ragland did not have such

contact with the students.  See Transcript of Hearing at 14:20-15:2 (taken April 13, 2006).[3]  Ragland

was also stripped of his bus driving duties while on administrative leave.  See Ragland Aff. ¶ 9, at 2.

Separate and apart from his school duties, Ragland was a lifeguard for a senior citizens

program that met on Monday, Wednesday, and Friday mornings from 7:30 a.m. to 8:30 a.m. at the

school swimming pool.  See id. ¶ 10, at 2.  San Jon contends that this activity is not school

sponsored, nor does it involve contact with students.  See id. ¶¶ 10-11, at 2.  Whitaker contends that

San Jon admits, however, that Ragland had contact with the students using the only pool in San Jon,

which was the school pool.  See Response at 3.  The school district does not pay Ragland for this

activity.  See Memorandum in Support of Defendant San Jon School's Motion for Summary

Judgment ("Summary Judgment Memorandum") at 6, filed January 24, 2006 (Doc. 23); Response

at 3.

The Ninth Judicial District Attorney's Office determined not to prosecute Ragland.  See

Letter from Andrea R. Reeb, Deputy District Attorney, to Deputy Bill Anderson, Quay County

Sheriff's Department, at 1 (dated November 21, 2003)(hereinafter "November 21 Letter").  Ragland

was allowed to resume his regular duties following receipt of the information by the school district

---

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

relating to the District Attorney's decision.  <u>See</u> Ragland Aff. ¶ 15, at 3.  Ragland was allowed to resume his prior duties; Whitaker contends that he was allowed to do so immediately while she experienced delay.  <u>See</u> <u>id.</u>; Response at 4.

## PROCEDURAL BACKGROUND

On October 29, 2004, Whitaker filed her Complaint against San Jon, alleging gender discrimination in violation of Title VII.  <u>See</u> Complaint ¶¶ 24-29, at 4-5, filed October 29, 2004 (Doc. 1).  Whitaker alleges that San Jon treated her differently, in response to the alleged shoving incident in 2003, than San Jon treated a similarly situated male employee.  <u>See</u> <u>id.</u>  San Jon moves the Court to grant summary judgment in its favor on the claim that Whitaker asserts in her Complaint.  San Jon contends that there is no genuine issue that Whitaker did not suffer an adverse employment action, that Whitaker is unable to show that similarly situated male employees were treated differently, and that San Jon's legitimate non-discriminatory motives were not pretextual.  <u>See</u> Summary Judgment Memorandum at 7-13.  Whitaker opposes San Jon's motion.  <u>See</u> <u>generally</u> Reply.  Whitaker presents the Court with no affidavits, depositions, or evidence to rebut anything that San Jon states as an undisputed material fact.  San Jon further requests an award of costs and attorney fees.  <u>See</u> Summary Judgment Memorandum at 14.

## STANDARD FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there

is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).  The Court may only consider admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted).  Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact."  Id. (citations and internal quotations omitted).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  Id. (citations and internal quotations omitted).  The non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).  Local Rule 56.1(b) requires that "[a] memorandum in opposition to the motion [for summary judgment] must contain a concise statement of the material facts as to which the party contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the

number of the movant's fact that is disputed.  All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."

## LAW REGARDING TITLE VII

When a Title VII plaintiff relies on circumstantial evidence of gender discrimination, the United States Court of Appeals for the Tenth Circuit has instructed district courts to analyze the plaintiff's claim under the test set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1124 (10th Cir. 2005).  The McDonnell Douglas test requires a Title VII plaintiff to first establish a prima facie case of discrimination.  See id. at 1124 (citation omitted).  The elements of a prima facie case of disparate treatment discrimination are: (i) membership in a protected class; (ii) adverse employment action; and (iii) disparate treatment among similarly situated employees.  See Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005)(citing Trujillo v. Univ. of Colorado Health Scis. Ctr., 157 F.3d 1211, 1215 (10th Cir. 1998)).  A Title VII plaintiff's burden in establishing a prima facie case is "slight."  Id.

"Conduct rises to the level of adverse employment action when it constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Stinnett v. Safeway, Ins., 337 F.3d 1213, 1217 (10th Cir. 2003)(citations and internal quotations omitted)).  "The phrase 'adverse employment action' is to be liberally defined. 'Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, [the Tenth Circuit] take[s] a case-by-case approach, examining the unique factors relevant to the situation at hand.'"  Id. (citation omitted).  Not every action "that may affect the plaintiff's future employment opportunities" qualifies as an

adverse employment action.  Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004)(quoting

Aquilino v. Univ. of Kan., 268 F.3d 930, 935 (10th Cir. 2001)).  Instead, an adverse action must be

"materially adverse to the employee's job status."  Wells v. Colo. DOT, 325 F.3d 1205, 1213 (10th

Cir. 2003)(citations and internal quotations omitted).  Adverse employment actions do not include

"those acts that merely have a de minimis impact upon an employee's future job opportunities."

Hillig v. Rumsfeld, 381 F.3d at 1033.  "Actions presenting nothing beyond a 'mere inconvenience or

alteration of responsibilities,' . . . do not constitute adverse employment action."  Stinnett v. Safeway,

Ins., 337 F.3d at 1217 (citation omitted).

     "An adverse employment action [is] not limited to those situations where a plaintiff can show

loss of an actual job, but also . . . encompass[es] those acts that carry a significant risk of humiliation,

damage to reputation, and a concomitant harm to future employment prospects."  Hillig v. Rumsfeld,

381 F.3d at 1032 (citations and internal quotations omitted).  "[A]n act by an employer that does

more than de minimis harm to a plaintiff's future employment prospects can, when fully considering

the unique factors relevant to the situation at hand, be regarded as an adverse employment action,

even where plaintiff does not show the act precluded a particular employment prospect."  Id. at 1033

(citations and internal quotations omitted).  Also, the Tenth Circuit has found that "requiring an

employee to develop new skills is not the kind of adversity that can support a prima facie case of

retaliation. . . ."  Tran v. Trs. of the State Colleges in Colo., 355 F.3d 1263, 1268 (10th Cir.

2004)(citation omitted).

     The Tenth Circuit has not addressed whether the imposition of paid administrative leave is

an adverse action, but the United States Courts of Appeals for the Fourth, Fifth, Sixth, and Eighth

Circuits have found that it is not an adverse action.  See Singletary v. Mo. Dep't of Corr., 423 F.3d

886, 892 (8th Cir. 2005); Peltier v. United States, 388 F.3d 984, 988 (6th Cir. 2004); Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001); Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000). The Court previously confronted this issue in Trujillo v. Bd. of Educ., 377 F. Supp. 2d 1020 (D.N.M. 2005)(Browning, J.). In that case, the Court concluded that placement on paid administrative leave was not an adverse employment action because the plaintiff "continued to receive pay and missed only approximately one month of actual work time." Id. at 1035.

"A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline. Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated." Green v. New Mexico, 420 F.3d 1189, 1194 (10th Cir. 2005)(citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1232 (10th Cir. 2000))(internal quotations omitted).

Once a Title VII plaintiff has carried her burden on her prima facie case, the employer must "articulate some legitimate, nondiscriminatory reason for the adverse employment action." Bryant v. Farmers Ins. Exch., 432 F.3d at 1124-25 (citation omitted). The legitimate, non-discriminatory reason shifts the burden back to the plaintiff "to show that the defendant discriminated on the illegal basis of . . . gender." Id. at 1125 (citation omitted).

The plaintiff may survive summary judgment by showing that, despite the non-discriminatory reason, the defendant discriminated against her on an unlawful basis by proving that the non-discriminatory reason is pretextual. See id. (citation omitted). "A reason is not a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Trujillo v. Univ. of Colo. Health Scis. Ctr., 157 F.3d at 1215 (citations and internal

quotations omitted). Pretext can be demonstrated by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Bryant v. Farmers Ins. Exch., 432 F.3d at 1125 (citations and internal quotations omitted). Typically, there are three routes by which a Title VII plaintiff establishes pretext: (i) "with evidence that the defendant's stated reason for the adverse employment action was false"; (ii) "with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances"; or (iii) "with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." Green v. New Mexico, 420 F.3d at 1193 (citations and internal quotations omitted). The employer is entitled to summary judgment if the employee could not offer evidence tending to show the defendant's innocent explanation for his employment decision was false. See Trujillo v. Univ. of Colo. Health Scis. Ctr., 157 F.3d at 1215 (citations and internal quotations omitted).

## ANALYSIS

The Court will grant San Jon's motion for summary judgment in substantial part and enter judgment for San Jon. San Jon has demonstrated that there is no genuine issue that Whitaker has not set forth a prima facie case of discrimination. San Jon also had legitimate, non-discriminatory reasons for its actions, and Whitaker has not shown pretext.

## I.   WHITAKER HAS NOT SET FORTH A PRIMA FACIE CASE.

Under the McDonnell Douglas test, Whitaker must first establish a prima facie case of discrimination. See Bryant v. Farmers Ins. Exch., 432 F.3d at 1124. Because Whitaker alleges

disparate treatment discrimination, see Complaint ¶¶ 24-29, at 4-5, she must satisfy the elements of

a prima facie case of disparate treatment discrimination, which are: (i) membership in a protected

class; (ii) adverse employment action; and (iii) disparate treatment among similarly situated

employees, see Orr v. City of Albuquerque, 417 F.3d at 1149 (citations omitted).

Neither party disputes that Whitaker, as a female, is a member of a protected class. See Reply

at 3 n.4, filed March 8, 2006 (Doc. 29); Response at 6.  Instead, the second and third elements form

the bones of contention between the parties.  San Jon has demonstrated that there is no genuine issue

of material fact that Whitaker has failed to satisfy either element.

## A.   WHITAKER HAS NOT SHOWN THAT THERE WAS AN ADVERSE EMPLOYMENT ACTION

An adverse employment action is an action that is materially adverse to the employee's job

status.  See Wells v. Colo. DOT, 325 F.3d at 1213.  An adverse employment action constitutes a

significant change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits.  See

Stinnett v. Safeway, Ins., 337 F.3d at 1217.  The Court examines the unique factors relevant to the

situation at hand on a case-by-case basis.  See Stinnett v. Safeway, Ins., 337 F.3d at 1217.

As San Jon points out, there is no evidence that Whitaker suffered an adverse employment

action following the alleged shoving incident in 2003.  See Summary Judgment Memorandum at 8-9.

Although Whitaker was placed on paid administrative leave, San Jon allowed her to teach the third

grade again after the end of the leave.  See Complaint ¶¶ 7-8, at 2; Stockton Aff. ¶ 11, at 2.  Upon

reassignment to her classroom, she was allowed to perform her duties as a third grade teacher

through the remainder of the school year.  See Defendant's Undisputed Material Fact 23; Plaintiff's

Response to Defendant's Statement of Undisputed Material Fact 23 (registering no dispute with this fact); December 3 Letter at 1-2; Stockton Aff. ¶ 21, at 3.  While Whitaker was reassigned to teach the 6th-8th grades in 2004-05, see Stockton Aff. ¶ 21, at 3, she did not suffer a loss in pay or benefits from this reassignment, see id. ¶ 25, at 4.  Nor is there any indication that Whitaker's responsibilities after the reassignment differed significantly from her duties before the reassignment.  San Jon has therefore carried its burden of showing that there is an absence of evidence to support Whitaker's case.  See Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164.

Attempting to identify specific facts that demonstrate the existence of a genuine issue of material fact, Whitaker highlights three potential adverse employment actions, none of which rises to the level of an adverse employment action.  First, Whitaker points to "[t]he most obvious adverse action taken against" Whitaker: the imposition of administrative leave with pay.  Response at 7.  Whitaker asserts that she "suffered loss of promotional opportunities" without, however, explaining what those promotional opportunities were.  Id.  Whitaker also alleges that her paid administrative leave was an adverse employment action because she "was stripped of her teacher duties[,] which she loved."  Id.  While the Tenth Circuit has not ruled whether being placed on paid administrative leave and suspended from performing one's duties, without more, is an adverse employment action, four other Circuits – the Fourth, Fifth, Sixth, and Eighth Circuits – have found that it is not an adverse action.  See Singletary v. Mo. Dep't of Corr., 423 F.3d at 892; Peltier v. United States, 388 F.3d at 988; Gunten v. Maryland, 243 F.3d at 869; Breaux v. City of Garland, 205 F.3d at 158.  The Court previously ruled that paid administrative leave is not an adverse employment action.  See Trujillo v. Bd. of Educ., 377 F. Supp. 2d at 1035.

The Court agrees with these four Circuits that paid administrative leave is not an adverse

employment action because the "terms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies" against employees who violate those rules.  See Gunten v. Maryland, 243 F.3d at 869 (citing McKenzie v. Illinois Dep't of Transp., 92 F.3d 473, 484 (7th Cir. 1996)).  Furthermore, the fact that this type of administrative leave is paid means that employees, like Whitaker, do not suffer a loss of pay or benefits during the leave period.  See Breaux v. City of Garland, 205 F.3d at 158.  Finally, restoration of one's position at the end of the leave period leaves the employee no worse off than before the action.  See Singletary v. Mo. Dep't of Corr., 423 F.3d at 891-92; Peltier v. United States, 388 F.3d at 988; Breaux v. City of Garland, 205 F.3d at 158.  In this case, Whitaker was paid while on administrative leave and returned to her original position at the end of the leave period, thereby suffering no loss in pay, benefits, or position at the school.  See Complaint ¶¶ 7-8, at 2; Stockton Aff. ¶ 11, at 2; December 3 Letter at 1-2.  With no harm to her employment status from the paid administrative leave, there is no foul under Title VII in the form of an adverse employment action.

Furthermore, this case presents similar facts as those the Court encountered in a prior opinion, Trujillo v. Bd. of Educ., holding that paid administrative leave is not an adverse employment action. In both cases, the plaintiffs received pay while on leave and neither was away from work for a long period of time: one month in Trujillo v. Bd. of Educ. and two months in this case.  See Trujillo v. Bd. of Educ., 377 F. Supp. 2d at 1035; Defendant's Undisputed Material Fact 22; Plaintiff's Response to Defendant's Statement of Undisputed Material Fact 22.

The second potential adverse employment action that Whitaker puts forth is that Henry allegedly initially denied her permission, during the leave period, to attend her daughter's homecoming on school grounds.  See Response at 7-8.  Yet Whitaker does not cite to any evidence

in the record establishing that Henry refused, at first, to allow her to witness the homecoming; she

merely asserts this fact in her brief.  See generally Response.  Even assuming that Henry acted as

Whitaker alleges, Whitaker fails to make evident how Henry's rejection of her request affected her

employment status, a required showing under Title VII's adverse employment action analysis.  See

Wells v. Colo. DOT, 325 F.3d at 1213. His denial of permission to come onto campus maintained

the status quo regarding Whitaker's employment: during her leave period, she was not allowed on

campus.  See January 21 Whitaker Depo. at 16:12-15.  Further, even if Henry's decision, by itself,

affected her employment in some adverse fashion, Whitaker admits that Henry rescinded his order

and allowed Whitaker to attend the homecoming.  See Response at 7-8.  Whitaker complains in her

brief that her efforts to acquire Henry's approval, including contacting her NEA representative, were

"unnecessary," id.; Whitaker cites, however, no evidence that establishes that the delay in getting

approval amounted to more than a "mere inconvenience," Stinnett v. Safeway, Ins., 337 F.3d at 1217.

      At the hearing, Whitaker raised San Jon's referral of Whitaker's case to the district attorney's

office as an adverse employment action.  See Transcript of Hearing at 15:8-22, 17:6-9.  Whitaker

again fails to bring to light how this action impacted her employment status; she does not dispute that

the district attorney declined to press charges and, subsequently, San Jon restored her to her original

position.  See Response at 3.  The closest Whitaker comes to revealing how the referral constituted

an adverse employment action is when her counsel stated at the hearing: "She lives in San Jon[,

which] is a small community.  This is not Albuquerque, where people may not know about this stuff.

This is a small community where people know that she has been referred to the D.A.'s Office.  That

is an adverse job action under the law, Your Honor."  Transcript of Hearing at 15:17-22.  Whitaker

fails to bring into focus why the community's knowledge of her referral -- without any citation to

evidence in the record establishing that the community knew of her referral -- is materially adverse to her job status.

If Whitaker means to argue that the community's knowledge of the referral has somehow hurt her future employment prospects, the Tenth Circuit has recognized that an act by an employer that does more than de minimis harm to a plaintiff's future employment prospects can, when fully considering the unique factors relevant to the situation at hand, be regarded as an adverse employment action, even where plaintiff does not show the act precluded a particular employment prospect. See Hillig v. Rumsfeld, 381 F.3d at 1033. Yet Whitaker has alleged no facts, nor cited to evidence, that her reputation has suffered to such an extent that her future employment prospects have been harmed. Also, Whitaker does not take issue with the fact that the referral resulted in the district attorney declining to prosecute her and that San Jon subsequently restored her to her old position. See Response at 3. Everyone familiar with the referral probably is familiar with the district attorney's decision not to prosecute, although the record is largely silent on who knew about either the referral or the district attorney's decision. Nor has she shown that any decline in her reputation impacted her current position, because she continues to work at San Jon as of the 2005-06 school year. See Stockton Aff. ¶ 26, at 4.

As a final matter, Whitaker's counsel mentioned at the hearing that she is not currently teaching at San Jon, although she still works there. See Transcript of Hearing at 17:13-23. Whitaker's counsel, however, indicated that this particular reassignment is not a part of this case, but he mentioned it to show that San Jon's attorney was incorrect that "there's nothing that's been adverse to her." Id. at 7:4-14, 17:24-18:2. Whitaker indicated that this new reassignment may be part of a separate complaint. See id. at 7:4-14, 17:13-18:2. Because Whitaker does not allege that this

-17-

reassignment is part of the adverse employment action against her, the Court will not examine it as such.

### B.   WHITAKER HAS NOT SHOWN THAT SHE WAS TREATED DIFFERENTLY THAN A SIMILARLY SITUATED MALE EMPLOYEE

In her Complaint, Whitaker alleges that a similarly situated male employee who faced a similar allegation was treated differently than her.  See Complaint ¶ 28, at 5.  Whitaker identifies Ragland as the male employee.  See id. ¶ 12, at 3.  Whitaker contends that, even though Ragland was also accused of using improper force on a student, San Jon meted out less punishment to him.  See Response at 8-9.

The Tenth Circuit has advised that district courts should compare work histories when determining whether two employees are similarly situated.  See Green v. New Mexico, 420 F.3d at 1194.  To carry its burden of showing that there is an absence of evidence on this element, San Jon explains that the two people were not similarly situated because Whitaker had a history of similar complaints going back to 1991, including an incident during the 2000-01 school year in which she struck a student with her hip, but the accusation against Ragland was the first incident in which he was involved.  See January 12 Whitaker Depo. at 33:25-34:3, 106:2-8; Ragland Aff. ¶ 6, at 1; Stockton Aff. ¶ 13, at 2.  According to San Jon, Whitaker's history of allegations made her case more serious than Ragland's and necessitated more serious action against her.  See Summary Judgment Memorandum at 10-11.  Whitaker puts forth no facts that contradict the different backgrounds setting Ragland apart from Whitaker, making them differently rather than similarly situated.  See generally Response.[4]

---

[4] Assuming that they were similarly situated, San Jon also contends that Ragland and Whitaker were treated similarly.  See Summary Judgment Memorandum at 11-12.  Both were placed on paid

## II.    SAN JON HAS SET FORTH LEGITIMATE, NON-DISCRIMINATORY REASONS FOR ITS ACTIONS, WHICH WHITAKER HAS NOT SHOWN TO BE PRETEXT.

Assuming that Whitaker has made a prima facie case of disparate treatment discrimination, San Jon then has the burden of articulating some legitimate, non-discriminatory reason for the adverse employment action.  See Bryant v. Farmers Ins. Exch., 432 F.3d at 1124-25.  San Jon contends that protecting students against a teacher with a history of using improper force against students –  not an unlawful discriminatory motive – motivated its decisions regarding Whitaker.  See Summary Judgment Memorandum at 12-13; Complaint ¶¶ 7-8, at 2; Stockton Aff. ¶ 11, at 2.  Having stated a legitimate, non-discriminatory reason, it falls to Whitaker to show that the non-discriminatory reason is pretext for a true discriminatory purpose.  See Bryant v. Farmers Ins. Exch., 432 F.3d at 1125.

Without presenting the Court with any evidence, Whitaker argues in her brief that her most recent performance evaluations, which have been positive, demonstrate that San Jon's basis for acting against her was pretext.  See Response at 10.  If San Jon possessed concern over her treatment of students, Whitaker maintains, then it would have expressed it on those evaluations.  See id.  Whitaker also spotlights her classes' above average scores on standardized tests.  See id.  Yet Whitaker fails

---

administrative leave after the allegations came to light.  See Ragland Aff. ¶ 7, at 1; Complaint ¶¶ 7-8, at 2; Stockton Aff. ¶ 11, at 2.  Prosecutors with the district attorney's office investigated both incidents.  See November 21 Letter at 1; Stockton Aff. ¶ 14, at 2.  San Jon instructed both not to come into contact with the students or the complaining party, or to come onto campus without permission.  See Ragland Aff. ¶ 9, at 2; January 21 Whitaker Depo. at 16:12-15.  Both returned to their original positions.  See Ragland Aff. ¶ 15, at 3; December 3 Letter at 1-2.  San Jon admits, however, that Ragland and Whitaker were treated differently in that San Jon imposed conditions on Whitaker's continued teaching, while Ragland did not face any new conditions.  See Summary Judgment Memorandum at 12; Transcript of Hearing at 7:18-8:3.  Even so, there is no genuine issue of material fact that Whitaker and Ragland were not similarly situated, rendering this element of Whitaker's prima facie case unsatisfied.

to attach those evaluations to the record, or cite to appropriate parts of those evaluations, nor does Whitaker attach evidence showing her students' above average scores. See generally id. To avoid summary judgment once the movant meets its burden, the non-movant must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor. See Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164. As the non-movant who will bear the burden of proof at trial, Whitaker must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324. By refusing to cite to evidence, or to provide the Court with that evidence, Whitaker has failed to meet her burden in avoiding summary judgment after San Jon met its burden. Because there is no genuine issue of material fact that Whitaker has not set forth a prima facie case and that San Jon had a legitimate, non-discriminatory reason for its actions toward Whitaker, the Court will grant San Jon's motion for summary judgment in substantial part and enter judgment for San Jon.

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted in part. The Court will enter judgment for the Defendant and against the Plaintiff.[5]

_____
UNITED STATES DISTRICT JUDGE

---

[5] The Defendant requests attorney's fees and costs, but provides no basis for such an award. Under the American rule, fees and costs are not shifted unless some rule or statute creates an exception. The Defendant points to no exception, and none appears available. The Court therefore denies the Defendant its request for attorney's fees and costs.

*Counsel:*

Gilbert J. Vigil
Gilbert J. Vigil Law Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Jerry A. Walz
Alfred Creecy
Martha Chicoski
Walz and Associates
Cedar Crest, New Mexico

     *Attorneys for the Defendant*